PHILLIPS *v.* ROMONA OOLITIC STONE COMPANY.

[No. 2,371. Filed February 23, 1898.]

SPECIAL VERDICT.—*Negligence.*—*Theory.*— *Burden of Proof.*— The burden is upon the plaintiff, in an action for damages for personal injuries based upon defendant's negligence, to show in the special verdict a right to recover on some consistent theory, and every fact necessary to make out a case upon such theory must appear in the verdict; the silence of the verdict in any material respect amounts, as to such matter, to a finding against plaintiff.

From the Morgan Circuit Court. *Affirmed.*

*W. R. Harrison* and *Willis Hickam*, for appellant.

*W. H. H. Miller* and *J. B. Elam*, for appellee.

BLACK, J.—The appellant brought his action against the appellee to recover damages for a personal injury suffered by the appellant while assisting as an employe of the appellee in the operation of a machine

for dressing stone. In the course of the working of the machine, called a "planer," a certain part thereof, called the cross-head, was occasionally raised or lowered by means of two belts. The belts passed over a large wooden pulley, which was above the machine and upon a shaft which was run by a steam engine. The belts also passed around another smaller metallic pulley attached to the planer by a counter-shaft, being a fixed or tight pulley. On either side of this fixed or tight pulley, and on said counter-shaft, was a loose pulley called an "idler." The belts, when not being used for raising or lowering the cross-head, ran upon the idlers. One was a straight belt, and the other a crossed belt; the former being used for raising, the latter for lowering the cross-head. The counter-shaft, with its three pulleys side by side, extended from east to west. The straight belt, when not in use for raising the cross-head, ran upon the west pulley, or idler, and the crossed belt, when not in use for lowering the cross-head, ran upon the east idler. When it was desired to raise or lower the cross-head, to do which required about five minutes, the belt so used for such purpose was shifted from its idler to the central fixed or tight pulley by means of a part of the machine called a "shifter." Said central pulley and the idlers were each twelve inches in diameter.

There was a special verdict, in the form of interrogatories and the answers thereto, upon which the court rendered judgment for the appellee. This action of the trial court is presented for review.

The facts found, so far as they need be particularly stated for the decision of the case, were, in addition to those condensed above, substantially as follows: The planer had been in use more than six months prior to appellant's injury. When kept in proper repair, the belts, pulleys, and shifters performed their

several functions perfectly, and the work of operating the planer was not dangerous to the employes, and the belts and pulleys raised and lowered the cross-head without assistance from the employes, and it was not necessary to press upon the belts in order to make them perform their functions. The appellant when injured had been assisting in the operation of the planer for some weeks. When he was placed to work on the planer as a helper, the belts, pulleys, and shifters were not in such condition as that they performed their functions of raising and lowering the cross-head, but it was necessary to press upon the belts in order to assist them in raising and lowering the cross-head. It was also found that, while the appellant was at work upon the planer, the belts, pulleys, and shifters got in such condition that they would not raise or lower the cross-head without pressure on the belts. When the machine got in such condition that it would not raise or lower the cross-head, the appellant was required by the appellee to aid the same by pressing upon said belts with an iron rod in his hands, the place where he was required to stand and press upon the belts with a rod being eight or ten feet above the ground, and upon the top of the cross-head or arch, on a space eight or ten inches in width, in front of and over said belts and pulleys. It was found that, while pressing upon the belts, with said rod, his body was unsupported except as it was sustained by the pressure upon the belt. The place where he was required to stand upon the planer and press upon the belt while it was in motion was one that was dangerous and unsafe to his person, the danger consisting of his liability to fall or be thrown into the belts and pulleys, while putting said pressure upon said belts. He protested to his foreman, stated by the jury to be his fellow servant, and to the superintendent,

against going upon the planer and pressing upon the belts when ordered to do so.   He complained about the belts being loose.   It was found that the appellee, by said foreman and superintendent, as late as two or three days before appellant was injured, promised him that the hoisting and lowering machinery of the cross-head should be fixed so that it would be unnecessary to apply pressure on the belts; that it was promised him by an officer or representative of the appellee that the belts should be tightened; and that he was promised by the appellee that it would get a man from Bedford to take his place as such helper and would restore him to his place as a stonecutter, and away from the planer; it being found also that he had worked at the establishment as a stonecutter before he was placed to work on the planer.   The promise to get a helper from Bedford was renewed until the day of the injury.   The promise to tighten the belt was last made three days before the injury.   After talking the matter over, the officers and representatives of the appellee decided, before the injury, that they would run the belt by which he was hurt, without tightening it or otherwise changing it.   To the following interrogatory the jury answered in the negative:  "Did the plaintiff know before his injury, and at that time, that those representing the defendant had decided to run the belt for an indefinite time without changing or tightening it, on account of certain disadvantages in running it tighter than it was?"   The appellant's foreman and the appellee's superintendent, in appellant's presence, at what time is not stated, went upon the planer, and with an iron rod, or piece of wood, applied pressure to the belt, as appellant was required to do when he was injured.   These facts, viz., the promise soon to get the helper from Bedford and restore appellant to his place

as cutter, the repeated promises to repair the machinery for hoisting and lowering the cross-head so as to do work in raising and lowering without pressure on the belts, and the acts of his foreman and the superintendent influenced and caused him to continue as such helper until he was injured.   It was the duty of one Avery, as superintendent of the quarry, to see that all machinery in the quarries was kept in proper repair, and, when necessary, to determine what repairs should be made upon the machinery when in use, and to replace old or worn out parts of the machinery by repairing the same, or with new machinery when necessary, and to have the machinery repaired, when necessary, by a machinist kept for that purpose.   The appellant had no right to order or make repairs for the machinery.

While acting as a helper to the foreman on the planer, the appellant, on the 20th of February, 1890, received a serious injury to his right hand.   The injury was caused by said hand being caught in "one of said belts" and pulleys.   At the time his said hand was caught and was injured, the appellant was pressing "upon said belt" with an iron rod; that is, he was pressing upon the one of said belts in which his hand was caught.   It was found that he was standing, at the time of receiving the injury, in the usual position on the top of the planer and in the discharge of his duties as such helper.   He was acting at the time as helper to one Bruce, called his foreman, in the operation of the planer.   He was applying the pressure to the belt when he was hurt.   He had been directed so to apply the pressure to the belt by the appellant through its foreman, Bruce.

His injury consisted in having his hand caught under the belt upon the pulley and the flesh and tendons torn from the palm and fingers by the belt passing

through the palm while so caught. The injury was caused by the iron rod with which he was pressing being jerked or knocked from his hand. The rod was knocked or jerked from his hand "by the rivets, lacing, or some obstruction upon the belt while in motion." When the rod was so knocked or jerked from his hand, it caused his hand to be caught "in said belt and pulley," and be so injured. His hand was caught and injured on the west pulley. He was damaged by said injury in the sum of $2,500.00.

The belt used in raising the cross-head sometimes slipped, so that it would not raise it. When it slipped, it was temporarily tightened by pressing against it with a stick or bar of iron held in the hands of an employe. At the time of his injury the appellant was engaged in tightening the belt by pressing upon it with a bar of iron flat upon one side and round upon the other. He was holding the flat side against the belt.

The appellant was injured by having his right hand drawn in between the belt and the pulley upon which it ran. The pulley where his hand was caught was one of the loose pulleys, or idlers, upon which the belts used in raising and lowering the cross-head ran when not being used to raise or lower the cross-head. His hand was caught between the belt and pulley by reason of his pressing the belt with an iron bar and by reason of his touching the belt with an iron bar. The belt under which his hand was caught was running upon the west pulley.

Touching or pressing the belt with an iron bar while it was running on a loose pulley would not help in any way to raise or lower the cross-head of the planer. It was not the duty of the appellant at the time of his injury, while standing on the upper part of the stone-planer, to do anything more there than assist in caus-

Phillips *v.* Romona Oolitic Stone Company.

ing the machine to raise or lower the cross-head of the planer. At the time of his injury the appellant could see the belt and pulley, and he understood the manner in which they operated, and knew that he would be hurt if his hand was drawn in between them. There was no defect in the planer, except that the belt was too loose to raise and lower the cross-head without being temporarily tightened.

The appellant did not press the corner of the belt to make it climb the tight pulley. There was no necessity for him to press against the corner of the belt to make it climb the tight pulley. The shifter, when used to shift the belt from a loose pulley to a tight one, would do that work without assistance. An instant before he was hurt he was holding an iron bar against the belt, and about ten inches above the shifter. Something on the surface of the belt struck or caught upon the rod while he was so holding it, and his hand was carried, knocked, or drawn over and beyond the shifter, inside the belt, and down into the pulley, which was below the shifter, and nearer to the appellant, by reason of something on the belt striking the rod from above.

We have set out the findings of the jury at considerable length, but we do not find it necessary to discuss or decide the matters argued by counsel in relation to the question as to the liability of a master when he has promised, but has failed, to repair a defect complained of by the servant, who has continued after such complaint to work with the defective appliance.

In the case before us it appears that there was no other defect in the machinery, except that the belt was too loose to raise and lower the cross-head without being temporarily tightened. This was the defect of which the appellant had complained to the ap-

pellee, and it was the one which the appellee promised to remedy. The method of applying the pressure is stated, and it is found that the danger arose from applying the pressure to the belt. It is not shown that he was required in his employment to apply the pressure for any purpose except to tighten the belt for the purpose of raising or lowering the cross-head, or that the application of pressure for any other purpose would aid in the operation of the machine or the performance of his duty as an employe. The cross-head could be raised or lowered by the aid of such pressure only when the proper belt was upon the tight, or central pulley. When the appellant was injured he was applying pressure on a belt running upon a loose pulley, or "idler." He was not doing so to aid the belt to climb the central pulley. There was no need of assisting the shifter. He could not have been applying pressure to assist in raising or lowering the cross-head. It does not appear that he was doing so by way of aiding in any way in the operation of the machine, or for any needful or useful purpose. He was not injured by reason of the looseness of the belt as the proximate cause, but was injured because the iron bar, round on one side but flat on the side which he was holding against the belt, was struck by something on the surface of the belt. It is not found whether or not he or his employer knew of the existence of this thing by which the bar was so struck, or that any complaint or promise had been made concerning it, or that it was a defect.

Manifestly, the verdict proceeds upon the theory that the employer's failure in the performance of duty consisted in the continued use of belts too loose to perform their intended work without the aid of temporary pressure, and in requiring the servant to incur danger which consisted in exposing himself by press-

ing upon the belt on the tight pulley for the purpose of raising or lowering a part of the machinery. But he was not injured while in the performance of the act shown to have been a part of his duty as an employe at the time of the injury and by reason of a defect shown to have been such through the employer's fault, which rendered the act dangerous.

The burden was upon the appellant to show in the verdict a right to recover upon some consistent theory. It was necessary to his recovery that every fact required to make out his case should appear in the verdict. The silence of the verdict in any material respect amounted as to such matter to a finding against him. It is not shown that he was injured through a cause for which the appellee is shown to have been blameable. The court did not err in giving judgment for the appellee on the special verdict. Judgment affirmed.